**Felix REYES, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 90–1435**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1990.

William Kimble, West Tex. Legal Services, Fort Worth, Tex., for plaintiff-appellant.

Randall Halford, HHS, Marvin Collins, U.S. Atty., Dallas, Tex., for defendant-appellee.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PER CURIAM:

Felix Reyes appeals from the decision of the district court affirming a denial of social security disability benefits by the Secretary of Health and Human Services. Because we find that the record as a whole supports the denial of benefits, and the Secretary applied the proper legal standards in evaluating the evidence, we affirm the district court's decision.

## I.

Felix Reyes was 52 years old at the time of his hearing before the administrative

law judge. He has a fifth grade education, but can read and write in both English and Spanish. He has worked as a painter, brick layer, carpenter, and as a machine operator in a wood workshop where he cut parts for doors and cabinets. Reyes currently lives with his daughter and her family. He helps with household chores, frequently walks fifteen blocks into town, and fishes in a nearby river. At the hearing, he testified that he can walk up to twenty-five blocks, and lift up to sixty pounds with pain.

Reyes was first admitted to the Shannon West Texas Memorial Hospital on August 8, 1986. He complained of headaches, nausea, imbalance, and slow speech. Doctors noted a history of hypertension, and a cranial CAT scan showed a left hemisphere subdural hematoma. He underwent a bur hole operation to drain the hematoma, and was discharged without headache, speech deficits, or hemiparesis. He was rehospitalized several days later, and doctors explored the bur hole site to further drain the hematoma. Dr. R. LeGrand saw Reyes for follow up treatments on September 4, 1986, and again on November 20, 1986, and reported that Reyes was doing well, that there was no evidence of hemiparesis, and that Reyes did not complain of any headaches. Reyes has not sought any further medical treatment for this head injury.

Reyes was hospitalized a third time on March 30, 1988 after vomiting some blood. Doctors found a tear at the esophagogastric junction and successfully treated him with medication. Reyes has also not sought further medical treatment for this problem.

Reyes filed an application for disability insurance benefits under Title II of the Social Security Act on November 10, 1987, alleging that he had been disabled since August 14, 1986, due to a stroke and hypertension. He also applied for supplemental security income under Title XVI of the Social Security Act with a protective filing date of October 14, 1987. After his claims were denied at the initial and reconsideration levels, Reyes requested a hearing which was held on December 14, 1988. At the hearing, Reyes testified that he suffers from chronic dizziness and headaches. He also testified that he attempted work in 1987 and 1988, but both times became sick and had to be taken home.

The ALJ also considered the results of consultative physical and psychological examinations which the Social Security Administration requested. Dr. J. Read performed the physical examination, which revealed only a high blood pressure reading of 190/100 and a previous head injury. At the time of the examination, Reyes told Dr. Read that he could not tolerate bright sunlight because it caused headaches and drowsiness and that he had an episode of chest pain a month earlier. Dr. Jarvis Wright and J. Berkshire performed the psychological evaluation; they reported borderline intellectual functioning and no other significant mental impairments.

The Secretary's regulations set forth a five-step sequential process for evaluating disability claims:

(1) Is the claimant working?

(2) Does the claimant have a severe impairment?

(3) Does the impairment meet or equal an impairment listed in Appendix 1? (If so, disability is automatic.)

(4) Does the impairment prevent the claimant from doing past relevant work?

(5) Does the impairment prevent the claimant from doing any other work?

*See* 20 C.F.R. §§ 404.1520 and 416.920 (1990); and *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987). The ALJ found that Reyes was not disabled at the fourth step because he could perform his previous work as a machine operator, and the Appeals Council declined to review his determination. In reviewing Reyes' claims, we must decide whether the record contains substantial evidence in support of the ALJ's decision, and whether the ALJ applied the proper legal standards in evaluating the evidence. *Moore v. Sullivan,* 895 F.2d 1065, 1070 (5th Cir.1990).

## ·II.

■ Reyes first claims that the Secretary disregarded his hypertension because it did not result in end organ damage, citing *Parker v. Bowen*, 793 F.2d 1177 (11th Cir.1986), and *Martin v. Secretary of Dept. of Health, Ed. & Welf.*, 492 F.2d 905 (4th Cir.1974). In *Parker*, the hypertension issue arose in the second step of the evaluation process. The Eleventh Circuit held only that hypertension can be a severe impairment even without significant end organ damage. *Parker*, 793 F.2d at 1180–81. Because the ALJ proceeded to the third step in evaluating Reyes' claim, we must infer that the ALJ found a severe impairment. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); and *Moon v. Bowen*, 810 F.2d 472, 473 (5th Cir.1987). Thus, *Parker* is inapplicable to this case.[1]

*Martin* also does not support Reyes' claim. In this case, the Fourth Circuit held that the Secretary cannot make end organ damage an exclusive pre-condition to the establishment of a disability due to hypertension under the fourth step. *Martin*, 492 F.2d at 909–910. There is no indication that the ALJ did so in Reyes' case—the absence of end organ damage precluded a finding of impairment under the third step, but the ALJ did not make this fact an exclusive basis for his finding under the fourth step. The ALJ refers to the absence of end organ damage under the fourth step, but puts more emphasis on the general "paucity of objective medical evidence." Unlike in *Martin*, there is substantial evidence from which the ALJ could conclude that Reyes' hypertension does not prevent him from performing his past relevant work. *See id.* at 910.

■ Reyes next claims that the ALJ's finding that he could perform his past relevant work as a machine operator is not supported by substantial evidence. He points to his allegations of hypertension, dizziness, lack of concentration, and inability to tolerate heat or sunlight, and emphasizes that the Disability Determination Division (a state agency) made an opposite finding. The findings of a state agency are not binding on the ALJ. *Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir.1987). Moreover, the record supports the ALJ's conclusions; the ALJ chose not to credit Reyes' statements about his functional limitations because the medical record did not substantiate them.

In a related argument, Reyes contends that the ALJ's conclusion under the fourth step is deficient because the ALJ did not compare the specific duties and requirements of a machine operator with Reyes' present impairments and capabilities. He cites *Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir.1988), where we found that "the record was devoid of any analysis of Abshire's duties as a route salesman by the ALJ" and that the ALJ's conclusion that Abshire could return to his past relevant work "could not be supported by substantial evidence in any event ..." In Reyes' case, by contrast, the record shows that the ALJ asked Reyes about his past duties as a machine operator and about his present disabilities. In addition, the record supports the ALJ's conclusions.

■ Reyes' final claim is that the ALJ improperly considered his performance of household chores, and other daily activities, under the fourth step. He argues that this evidence is irrelevant because it does not reflect his ability "to perform the required physical acts day in and day out in the sometimes stressful conditions in which all people work in the real world." *Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir.1988), quoting *Allred v. Heckler*, 729 F.2d 529, 533 (8th Cir.1984). However, in the cases cited by Reyes, the ALJ relied on the claimant's demeanor at trial, or the claimant's daily activities, to form his conclusions despite substantial contrary evidence. *See*

1. In a related argument, Reyes claims that the ALJ evaluated his disability under the approach set forth in Social Security Ruling 82–55, which required a finding of nonseverity if the hypertension did not cause significant end organ damage. The Fifth Circuit struck down this approach in *Estran v. Heckler*, 745 F.2d 340 (5th Cir.1984), and *Stone v. Heckler*, 752 F.2d 1099 (5th Cir.1985). SSR 82–55 was subsequently rescinded. *See Parker*, 793 F.2d at 1180. This argument is also without merit because we infer that the ALJ found a severe impairment.

*Wingo,* 852 F.2d at 830–31 and n. 2; *Lovelace v. Bowen,* 813 F.2d 55, 59–60 (5th Cir.1987); and *Prince v. Bowen,* 894 F.2d 283, 286–87 (8th Cir.1990). None of the cases hold that the ALJ cannot consider evidence of daily activities in conjunction with other evidence. In addition, the inconsistencies between Reyes' testimony about his limitations and his daily activities were quite relevant in evaluating his credibility. *See Hollis v. Bowen,* 837 F.2d 1378, 1385 (5th Cir.1988).

For the above reasons, the judgment of the district court is AFFIRMED.