**L.E. MILLER, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

No. 6:92–CV–0072–C.

United States District Court,
N.D. Texas,
San Angelo Division.

June 11, 1993.

Kathy Womack, San Angelo, TX, for plaintiff.

Richard H. Stephens, U.S. Atty., and Myrna B. Silen, Asst. U.S. Atty., N.D. Texas, Dallas, TX, for defendant.

### JUDGMENT

CUMMINGS, District Judge.

Of equal date herewith an Order Granting Appeal and Reversing Decision of Secretary of Health and Human Services having been entered,

**JUDGMENT IS ENTERED ACCORDINGLY.**

**IT IS, ORDERED AND DECREED** there is not substantial evidence to support the decision of the Secretary finding "no disability" at the Fifth Sequential Step of the decision making process for purposes of disability insurance benefits. It is, further found the Plaintiff is "disabled" and entitled to benefits pursuant to 20 C.F.R. 404.1562.

**IT IS, FURTHER ORDERED AND DECREED** there is substantial evidence to support a finding of disability pursuant to the Federal Regulations with disability beginning on October 22, 1989.

**IT IS, FURTHER ORDERED AND DECREED** the Plaintiff did become disabled on October 22, 1989, and is entitled to past due benefits from this date to the date of the entry of this Order by virtue of the Secretary paying such past due benefits, and then is entitled to receive future benefits under the disability insurance benefits program.

**IT IS, FURTHER ORDERED AND DECREED** this case is remanded to the Secretary for calculation of past due benefits from the date of October 22, 1989, and for entry of an Order paying future benefits.

The Clerk will furnish a copy hereof to any party appearing *pro se* by certified mail/return receipt requested and to each attorney of record by first class mail.

### FINDINGS, CONCLUSIONS AND RECOMMENDATION

WARNICK, United States Magistrate Judge.

The Plaintiff, L.E. Miller, is appealing a decision of the Secretary of Health and Human Services denying his claim for disability insurance benefits, 42 U.S.C. 405(g). Plaintiff had a hearing before an Administrative Law Judge (ALJ) on December 3, 1991. The ALJ rendered his decision on January 13, 1992. The ALJ decided the case at the Fifth Sequential Step of the decision making process and applied the Medical Vocational Guidelines to find the Plaintiff was "not disabled". The Appeals Council on September 22, 1992, found there was no basis for a review. Thus, the ALJ's determination became the final decision of the Secretary.

Plaintiff was born on December 21, 1933. Plaintiff claimed an onset date of his disabili-

ty as October 22, 1989 (TR–143). He has never done anything but heavy manual labor. Plaintiff alleges he last worked on March 10, 1990 (TR–99). Plaintiff had a 4th grade education. However, he was illiterate until he became disabled. He has been attending literacy classes. When he first began attending the classes he could only read at a 1st grade level, but according to the testimony from the ALJ hearing he has now progressed to a 3rd grade level. Plaintiff worked for over 30 years for the same supermarket chain. He acted as a stocker and janitor. He also did yard work in his spare time. Plaintiff alleges he has a lower back problem which prevents him from being able to perform even sedentary work.

The purpose of the Plaintiff's claim is to establish a disability under the Social Security Act, 42 U.S.C. 405(g).

Pursuant to the Statutory provisions, the Secretary has promulgated regulations which establish a five-step sequential process for determining the presence or absence of disability to award or to deny disability payments, 20 C.F.R. 404.1520 (1984). All of the various regulatory definitions, etc., appear in 20 C.F.R. 404.1501, Sub-part P, et seq. The Plaintiff bears the burden of proving the first four sequential steps in the test for disability. Then on the final step, if it is reached, the Secretary bears the burden of proof.

### FIRST STEP

The first step is the Plaintiff at the time of the claim of disability and thereafter must not be engaged in substantial gainful activity. If Plaintiff is engaged in substantial gainful activity then the Plaintiff is not disabled, 20 C.F.R. 404.1520(b) and 404.1510.

### SECOND STEP

If the ALJ decides Plaintiff is not engaged in substantial gainful activity, the second determination is to find if there is an (1) impairment and (2) whether it's severe, 42 U.S.C. 423(d)(2)(A). The Plaintiff under this severity regulation must have an impairment which is severe to be found disabled, 20 C.F.R. 404.1520(c), 404.1508, 404.1513, 404.1520–.1530, *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and *Sewell*

*v. Heckler*, 764 F.2d 291 (5th Cir.1985). If there is a severe impairment the process moves to the next step.

### THIRD STEP

The Secretary has published certain listed impairments utilizing in part tables and grids for determining a per se disability, Part 404, Appendix 1, Sub-part P, and 20 C.F.R. 404.-1525. These listings can establish disability, but they are not determinative of "no disability." Their basis is some impairments are per se disabling without considering age, education or work experience, *Perez v. Schweiker*, 653 F.2d 997 (5th Cir.1981). The listings are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the specific body system or function they affect. Each impairment is defined in terms of specific objective medical signs, symptoms, and/or laboratory results. For a claimant to demonstrate his impairment matches a listing, it must meet *all* of the specified medical criteria. If the appropriate listing indicates the Plaintiff is disabled, then the inquiry ends and the Plaintiff is entitled to benefits, *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). However, if the listing does not show a per se disability such a finding does not result in a final conclusion of no disability, 20 C.F.R. 404.1520(d).

### FOURTH STEP

The fourth step is to decide whether the present severe impairment prevents the performance of Plaintiff's past relevant work. If the Plaintiff is capable of doing his/her past relevant work there is no disability, 20 C.F.R. 404.1520(e), *Crouchet v. Sullivan*, 885 F.2d 202 (5th Cir.1989), and *Reyes v. Sullivan*, 915 F.2d 151 (5th Cir.1990).

Under the first four Sequential Steps of the decision making process the Plaintiff bears the burden of proof, *Lewis v. Weinberger*, 515 F.2d 584, 586 (5th Cir.1975). If through step 4 the findings are Plaintiff (1) is not engaged in substantial gainful employment, (2) has a severe impairment, (3) does not have a per se disability based on the listing of impairments, and (4) is not capable

of performing past relevant work, then Plaintiff has established a prima facie disability, *Ferguson v. Schweiker*, 641 F.2d 243, 246 (5th Cir.1981). The decision process then moves to the fifth and final Sequential Step.

### *FIFTH STEP*

On this final step the burden of proof is on the Secretary, *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). The initial determination to be made at this step is if the severe impairment prevents the Plaintiff from performing any work, even sedentary. This step incorporates consideration of the residual functional capacity, the age, education and past work experience of the Plaintiff, 20 C.F.R. 404.1520(f). If the Plaintiff is capable of performing at least sedentary work, then at this juncture the decision must also be made as to whether the severe impairments are exertional, non-exertional or a combination of both. If the impairments are solely exertional then the appropriate tables (Medical–Vocational Guidelines) are utilized, 20 C.F.R. Pt. 404, Sub-part P, App. 2; *Heckler v. Campbell*, 461 U.S. at Pgs. 467 and 470. If it is determined the Plaintiff is limited to sedentary work, the ALJ is required to refer to 20 C.F.R. 404.1569 and Table No. 1, Appendix 2, Pt. 404, Sub-part P, to determine if under his residual functional capacity with his severe medically determinable impairments, he is disabled. If the determination is the Plaintiff can perform light work the ALJ refers to Table No. 2, supra. Table No. 3, supra, is utilized for medium work. However, if the Plaintiff suffers from non-exertional or a combination of exertional and non-exertional impairments the Secretary may not utilize the Medical–Vocational Guidelines for a decision. Although the Guidelines may be under limited circumstances used as an "insight" for a decision, 20 C.F.R. Pt. 404, Sub-part P, Appendix 2, § 200.00(e)(2) and *Young v. Sullivan*, 911 F.2d 180 (9th Cir. 1990). When the Guidelines are not a decision making standard then the Secretary may only sustain his burden of proof by producing expert vocational testimony concerning the existence and availability of jobs in the national economy which the Plaintiff can perform, 20 C.F.R. P. 404, Sub-part P, App. 2, Sec. 200.00(e)(1) and (2), *Harrell v.*

*Bowen*, 862 F.2d 471 (5th Cir.1988), *Fields v. Bowen*, 805 F.2d 1168 (5th Cir.1986), and *Martin v. Heckler*, 748 F.2d 1027 (5th Cir. 1984).

The five-step sequential test has been discussed and judicially approved many times, *Bowen v. Yuckert*, 482 U.S. at Pgs. 141–142, 107 S.Ct. at Pgs. 2291–92; *Heckler v. Campbell*, 461 U.S. at Pg. 461, 103 S.Ct. at Pg. 1954, and *Martin v. Heckler*, 754 F.2d 1262 (5th Cir.1985).

### *SUBSTANTIAL EVIDENCE*

The standard by which the decision of the ALJ is reviewed is known as the doctrine of "substantial evidence". If the ALJ's findings are supported by substantial evidence then the decision will be affirmed. Substantial evidence was defined by the United States Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) as,

> ". . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

A substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the decision of the Secretary. The Court is required to consider the record as a whole, *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985), and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).

On the converse to find there is "no substantial evidence" to justify reversal of the ALJ's decision, it must be concluded there is a "conspicuous absence of credible choices", *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir.1983).

There is a definite lack of medical records with regard to the Plaintiff. Plaintiff was seeing Dr. D.E. Holdridge who is a chiropractor. There exists in the records his various office notes from 1980 through 1991. In fact, his office records show as early as December 29, 1980 (TR–145) the Plaintiff was suffering low back pain. The final entry from Dr. Holdridge on April 8, 1991, indicates an x-ray two (2) weeks prior to this

date indicated there was arthritis in Plaintiff's lower back. No mention of this x-ray finding of arthritis was made by the ALJ, nor was it noted in the Defendant's Motion for Summary Judgment and Brief in Support Thereof. There is also an x-ray study which was done by Dr. Jerry Schulze. It was done on March 21, 1991, and is a lumbar spine x-ray study. It noted there was normal position and alinement of the vertebral bodies. However, there were found mild degenerative changes involving the vertebral bodies. There is nothing in the record to indicate this is compatible with the finding of arthritis in the x-rays by Dr. Holdridge. There are no other medical records with regard to the back problem of the Plaintiff.

John Carlos Parsons is the literacy tutor of the Plaintiff. He testified he is a volunteer in the Adult Literacy Council in his county, and he does have a degree in journalism. Mr. Parsons said he had begun working with the Plaintiff in May, 1990, and worked with him right up to the date of the testimony. Parsons testified the technique used by them involved four (4) skill books. When the final skill book was successfully completed, then this person would be at a 5th grade reading level. He testified Plaintiff was first assessed as below a 1st grade reading level. Parsons said Plaintiff had completed skill book 3, and would put him roughly at a 3rd grade reading level. 20·C.F.R. 404.1564(b) is the Federal Regulation for determining the educational level of each person. There are three (3) levels of literacy involved in this case. The first is illiteracy, the second is marginal education, and the third is limited education. An illiterate person cannot read or write a simple message such as instructions or inventory lists, and has an inability to read or write. Marginal education is generally considered, according to the Regulations, to be formal schooling at a 6th grade level or less. The language skills for marginal education are those needed to do simple, *unskilled* types of jobs. A limited education is one of a reading skill between the 7th through 11th grade. It will permit ability in reasoning, arithmetic and language skills, but not enough to do complex job duties needed in *semi-skilled* or skilled jobs. Under the most generous consideration of the reading

skills of the Plaintiff he is at a marginal education. He is some considerable distance away from a limited education. Prior to entering the literacy program he would have to have been considered an illiterate. He was reading at less than a 1st grade level. This puts an interesting light on the whole consideration in this case. It must be specifically noted even if he has a marginal education he only has an educational level which according to the Regulations will equip him to do simple, *unskilled* types of jobs, before he will arrive at the semi-skilled or skilled jobs level he will have to have a limited education. He did work as a stock clerk and janitor for thirty plus years at the Safeway Food Stores. The ALJ found the type of work he did required *"reading, writing* and pricing". The ALJ did acknowledge at this time because he could only read at a 3rd grade level his ability to recognize merchandise and prices would be limited.

The Secretary also called Dr. Miriam Rutledge as a vocational expert. After the hypothetical questions and being instructed Plaintiff could perform light work she named three (3) "semi-skilled" jobs he could perform. These jobs were based upon a finding by the ALJ of the transferability of Plaintiff's skills.

In his findings the ALJ stated the claimant had "a remote 5th–grade education". Whatever a remote 5th grade education may be it at best would be a marginal education. Keeping in mind this educational level under the Regulations only gives Plaintiff the ability to do simple, *unskilled* types of jobs. The ALJ also found the claimant had acquired work skills in recognizing merchandise and pricing. The ALJ said those skills could be applied to meet the requirements of *semi-skilled* work activities of other work. First, the ALJ found he had only a marginal education which gave him the ability in reasoning, arithmetic and language skills which would only permit him to do simple, *unskilled* jobs. Then the ALJ found he had acquired work *skills* which were transferable to other jobs. Those work skills were recognizing merchandise and pricing. These findings are obviously inconsistent.

The skill requirements are set out in 20 C.F.R. 404.1568. The Regulation describes unskilled work, 404.1568(a) semi-skilled work, 404.1568(b) and skilled work, 404.1568(c). Unskilled work is just simple duties which require for example only handling, and can usually be learned in thirty (30) days with little vocational preparation. No judgment is needed versus semi-skilled which does require more complex duties. A semi-skilled job is one where coordination and dexterity are necessary as for example, the Regulation says when his hand or feet must be moved quickly to do repetitive tasks.

In *Varley v. Sec. of Health and Human Services,* 820 F.2d 777 (6th Cir.1987) the Court noted the claimant had acquired work skills. The work skills he had acquired were a knowledge of and ability to use hand and power tools, the ability to read blueprints, mechanical comprehension and the ability to make reports. These were skills acquired in the work area. In *Perez v. Heckler,* 777 F.2d 298 (5th Cir.1985) the Court was considering semi-skilled work. This claimant was a truck driver. The Court noted truck driving required coordination, dexterity, alertness and use of hands and feet. Thus, he was semi-skilled. In *Weaver v. Secretary of Health and Human Services,* 722 F.2d 310 (6th Cir. 1983) the Court made the distinction between aptitudes and skills. The Sixth Circuit said an aptitude is an inclination, a natural ability, talent, or capacity for learning. The Court then said a skill is a learned power for doing something competently. An aptitude was described as an *innate* ability while a skill is a *learned* ability. In *Ellington v. Secretary of Health and Human Services,* 738 F.2d 159 (6th Cir.1984) this Circuit again dealt with the question of semi-skilled. It found "independence of judgment" and "responsibility for a work product" are too vague to constitute particular skills which might be found as transferable. The Court noted skills relate to specific vocational significant work activities necessary to do a particular job. In *Cole v. Secretary of Health and Human Services,* 820 F.2d 768 (6th Cir.1987) the distinction between aptitudes and skills was again made. The Court said skilled is a learned ability to do a specific job. However, it found physical abilities to do certain things and manual dexterity where not trained for a specific job are simply aptitudes rather than skills. In *Podedworny v. Harris,* 745 F.2d 210 (3rd Cir. 1984), the Court said skills are those matters acquired in very specialized work, or work in an isolated vocational setting. The Court said things such as alertness, coordination and dexterity described traits, aptitudes and ability rather than acquired work skills. More in point in *Ingle v. Heckler,* 763 F.2d 169 (4th Cir.1985) the Court said *reading, writing and counting* are *not* skills. In *Wallace v. Secretary of Health and Human Services,* 586 F.Supp. 395 (D.N.J.1984) the Court said the ability to pay attention, concentrate, perceive details, do a number of things at one time, manual dexterity and good vision are not skills. Social Security Ruling 82–41 basically states a skill is a knowledge of a work activity which requires the exercise of a significant judgment going beyond the carrying out of simple job duties.

■ A skill can only be acquired through the performance of an occupation which is above the unskilled level. This would be something which requires more than thirty (30) days to learn. The Ruling cites such things as making precise measurements, reading blueprints, setting up and operating complex machinery. Any kind of a skill gives a person a special advantage over unskilled workers in the labor market. Just as example, one of the jobs cited by the vocational expert was inventory clerk. The vocational expert said all this would require Plaintiff to do was to assist someone and Plaintiff could count cans, boxes, etc (TR–93). Who then is the inventory clerk? This describes Plaintiff as an inventory clerk's helper and not as the inventory clerk. This is certainly not some skill which takes over thirty (30) days to learn. The jobs described by the vocational expert required, according to him, transferable skills. The vocational expert in testifying said the skills learned by Plaintiff in his job were those involving reading, writing and pricing (TR–85). These are not skills. See *Ingle v. Heckler,* supra. He said the skills would be limited to essentially recognizing merchandise and either pricing or stocking merchandise. The vocational expert also said because Plaintiff was *able* to

*read,* recognize and use numbers, thus he had acquired skills (TR–87). Plaintiff did not learn to read until he quit working. How then could he acquire a skill involving reading when he can not read? The vocational expert referred to those as transferable skills, thus said Plaintiff would be able to be a meter reader because it was job requiring reading and writing (TR–89). It has to be obvious this is a misapplication of the Regulations by the ALJ.

There is nothing in this record, nor any testimony to show Plaintiff was even a semi-skilled worker. He was an unskilled worker. There was nothing in the record which pointed to his job as a stocker which required him to take over thirty (30) days to learn to do this. It would seem a rather simple chore to hand a stocker a case of can goods or whatever, show him in the store where those were to be shelved, and he could match by pattern and design what the cans looked like and put the same cans on the shelf with other cans like those through color and appearance without having to read a word. Even if he did have to read the words like tomato, cake mix or anything else, this is not a special skill which could be transferred to some other job. This is simply the aptitude for reading and the ability to learn cans of tomato sauce go with cans of tomato sauce of the same color and brand. Thus, it would appear when the Plaintiff's claims through his attorney at the ALJ Hearing 20 C.F.R. 404.1562 applied to his claim he is correct. This is supported by substantial evidence. Plaintiff has only a marginal education, he has a work experience of 35 years or more in which he did arduous unskilled physical labor. He is no longer able to do this type of work because of *severe* impairments, (ALJ Finding No. 3 at TR–18 and 19), therefore he is disabled.

I, therefore recommend it be found there is not substantial evidence to support the decision of the Secretary of "no disability" at the Fifth Sequential Step of the decision making process for purposes of disability insurance benefits.

I, further recommend it be found the Plaintiff is entitled to the benefit of 20 C.F.R. 404.1562 and he is by such Regulation "disabled".

I, further recommend it be found Plaintiff became disabled on October 22, 1989, and is entitled to past due benefits from this date to the entry of an order by the Secretary paying past due benefits, and then entitled to future benefits under disability insurance benefits.

The Clerk is directed to file the Findings, Conclusions and Recommendation and to send a copy of it to the Plaintiff and a copy to each attorney of record. Any party may object to the proposed Findings, Conclusions and Recommendation within ten (10) days after having been served with a copy hereof, Rule 72, Federal Rules of Civil Procedure, and Rule 4(a)(1) of Miscellaneous Order No. 6 as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas. Such party shall file with the Clerk of the Court, serve on the Magistrate Judge and on all parties, written objections, which shall specifically identify the portions of the Findings, Conclusions and Recommendation to which objection is made and shall set out fully the basis for each such objection. Objections are required to obtain a de novo review by a United States District Judge. Failure to timely file written objections to the proposed Findings, Conclusions and Recommendation contained in this report shall bar an aggrieved party from attacking the factual findings on appeal. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) and *Nettles v. Wainwright,* 677 F.2d 404, 408 (5th Cir.1982) (en banc).

DATED May 27, 1993.