**Harold E. DAVIS, SSN: 450–50–5164, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 5:93–CV–175–C.**

United States District Court, N.D. Texas, Lubbock Division.

Feb. 16, 1994.

---

Steve L. Hurt, Plainview, TX, for plaintiff.

E. Scott Frost, Asst. U.S. Atty., Lubbock, TX, for defendant.

### ORDER REMANDING TO SECRETARY OF HEALTH AND HUMAN SERVICES

CUMMINGS, District Judge.

The Plaintiff, Harold E. Davis, is appealing a decision of the Secretary of Health and Human Services denying his application for disability insurance benefits, 42 U.S.C. § 405(g). The United States Magistrate Judge entered Findings, Conclusions and Recommendation. No Objections have been filed by either the Plaintiff or the Defendant to such Findings, Conclusions and Recommendation. The Court has made an independent examination of the records.

It is, Ordered the findings of fact, conclusions of law and recommendation of the U.S. Magistrate Judge are hereby adopted.

It is, therefore, Ordered there is not substantial evidence to support the decision of the Secretary finding "no disability" at the Fifth Sequential Step of the decision making process because of the lack of utilization of a medical advisor to establish an onset date of disability.

It is, further Ordered there is not substantial evidence to support the decision of the Secretary finding "no disability" at the Fifth and final Sequential Step of the decision making process.

It is, Ordered the Plaintiff does suffer a "disability" for disability insurance purposes at the Fifth Sequential Step of the decision making process. However, because of the failure to use a medical examiner the onset date of the disability is ambiguous. Plaintiff's last date of eligibility for disability insurance payments was in March, 1988.

Therefore, the determination of the disability date is critical.

It is, further Ordered this Court retains jurisdiction of this case because this Remand Order is for the taking of additional evidence, and is under 42 U.S.C. § 405(g) a sentence six remand, and not the entry of a final judgment under sentence four of such statute, *Sullivan v. Finklestein,* 496 U.S. 617, 625–30, 110 S.Ct. 2658, 2664–66 (1990), *Frizzell v. Sullivan,* 937 F.2d 254 (5th Cir.1991), and *Kane v. Heckler,* 731 F.2d 1216 (5th Cir.1984).

It is, therefore Ordered the case is remanded to the Secretary only for reconsideration of the onset date of the disability at the Fifth Sequential Step of the decision making process.

It is, further Ordered six (6) months from the date of this Order and each six (6) months thereafter both the Plaintiff and the Defendant are required to file with this Court a report of the status and progress of this Social Security claim for both disability insurance and supplemental security income benefits.

### FINDINGS, CONCLUSIONS AND RECOMMENDATION

WARNICK, United States Magistrate Judge.

The Plaintiff, Harold E. Davis, is appealing a decision of the Secretary of Health and Human Services denying his application for disability insurance benefits, 42 U.S.C. § 405(g).

The Plaintiff had his initial Administrative Law Judge (ALJ) Hearing on November 29, 1990. The ALJ entered his decision at the Fourth Sequential Step of the decision making process on February 15, 1991. Then on January 14, 1992, the Appeals Council set this decision aside and remanded it for a second ALJ Hearing. The second Hearing was held on March 16, 1992. The ALJ entered his determination this time at the Fifth Sequential Step of the decision making pro-

cess on July 29, 1992. The ALJ made a finding based upon the Medical Vocational Guidelines, and in addition, upon the testimony of a vocational expert. On May 13, 1993, the Appeals Council found there was no basis for a review of the ALJ decision. The Appeals Council considered the post-ALJ Hearing submission made by the Plaintiff. Thus, the ALJ's July 29, 1992, determination became the final decision of the Secretary.

Plaintiff was born on June 12, 1935. Plaintiff has a high school education. Plaintiff claims both an onset date of his disability and the last date on which he was gainfully employed as March 15, 1988. Plaintiff claims he suffers residuals from poliomyelitis, which he contracted in 1952. He also initially claimed he suffered from hypoglycemia.[1] It later will develop he does suffer from a mild form of hypertension. Plaintiff suffered the polio while he was in high school. According to his testimony, it delayed his graduation by about one and a half years. He even attempted to serve in the Armed Forces. However, he was in less than 90 days and given an honorable discharge for medical reasons. Plaintiff's father was in the electric motor repair business. Plaintiff simply went to work for his father. Plaintiff later will own the business, and electric motor repair will be the single source of his vocational or work experience.

The purpose of the Plaintiff's claim is to establish a disability under the Social Security Act, 42 U.S.C. § 405(g).

Pursuant to the Statutory provisions, the Secretary has promulgated regulations which establish a five-step sequential process for determining the presence or absence of disability to award or to deny disability payments, 20 C.F.R. § 404.1520 (1984). All of the various regulatory definitions, etc., appear in 20 C.F.R. § 404.1501, Sub-part P, et seq. The Plaintiff bears the burden of proving the first four sequential steps in the test for disability. Then on the final step, if it is reached, the Secretary bears the burden of proof.

---

1. This is a misnomer. As will be shown there was an indication of a diabetic condition. However, diabetes is an elevated blood sugar or hy-

perglycemia. Hypoglycemia is a depressed or lowered blood sugar.

## FIRST STEP

The first step is the Plaintiff at the time of the claim of disability and thereafter must not be engaged in substantial gainful activity. If Plaintiff is engaged in substantial gainful activity then the Plaintiff is not disabled, 20 C.F.R. §§ 404.1520(b) and 404.1510.

## SECOND STEP

If the ALJ decides Plaintiff is not engaged in substantial gainful activity, the second determination is to find if there is an (1) impairment and (2) whether it's severe, 42 U.S.C. § 423(d)(2)(A). The Plaintiff under this severity regulation must have an impairment which is severe to be found disabled, 20 C.F.R. §§ 404.1520(c), 404.1508, 404.1513, 404.1520–1530, *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and *Sewell v. Heckler*, 764 F.2d 291 (5th Cir.1985). If there is a severe impairment the process moves to the next step.

## THIRD STEP

The Secretary has published certain listed impairments utilizing in part tables and grids for determining a per se disability, Part 404, Appendix 1, Sub-part P, and 20 C.F.R. § 404.1525. These listings can establish disability, but they are not determinative of "no disability." Their basis is some impairments are per se disabling without considering age, education or work experience, *Perez v. Schweiker*, 653 F.2d 997 (5th Cir.1981). The listings are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the specific body system or function they affect. Each impairment is defined in terms of specific objective medical signs, symptoms, and/or laboratory results. For a claimant to demonstrate his impairment matches a listing, it must meet *all* of the specified medical criteria. If the appropriate listing indicates the Plaintiff is disabled, then the inquiry ends and the Plaintiff is entitled to benefits, *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1953–54, 76 L.Ed.2d 66 (1983). However, if the listing does not show a per se disability such a finding does not result in a final conclusion of no disability, 20 C.F.R. § 404.1520(d).

## FOURTH STEP

The fourth step is to decide whether the present severe impairment prevents the performance of Plaintiff's past relevant work. If the Plaintiff is capable of doing his/her past relevant work there is no disability, 20 C.F.R. § 404.1520(e), *Crouchet v. Sullivan*, 885 F.2d 202 (5th Cir.1989), and *Reyes v. Sullivan*, 915 F.2d 151 (5th Cir.1990).

■ Under the first four Sequential Steps of the decision making process the Plaintiff bears the burden of proof, *Lewis v. Weinberger*, 515 F.2d 584, 586 (5th Cir.1975). If through step 4 the findings are Plaintiff (1) is not engaged in substantial gainful employment, (2) has a severe impairment, (3) does not have a per se disability based on the listing of impairments, and (4) is not capable of performing past relevant work, then Plaintiff has established a prima facie disability, *Ferguson v. Schweiker*, 641 F.2d 243, 246 (5th Cir.1981). The decision process then moves to the fifth and final Sequential Step.

## FIFTH STEP

■ On this final step the burden of proof is on the Secretary, *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). The initial determination to be made at this step is if the severe impairment prevents the Plaintiff from performing any work, even sedentary. This step incorporates consideration of the residual functional capacity, the age, education and past work experience of the Plaintiff, 20 C.F.R. § 404.1520(f). If the Plaintiff is capable of performing at least sedentary work, then at this juncture the decision must also be made as to whether the severe impairments are exertional, non-exertional or a combination of both. If the impairments are solely exertional then the appropriate tables (Medical–Vocational Guidelines) are utilized, 20 C.F.R. Pt. 404, Sub-part P, App. 2, *Heckler v. Campbell*, 461 U.S. at pgs. 467 and 470, 103 S.Ct. at pgs. 1957 and 1959. If it is determined the Plaintiff is limited to sedentary work, the ALJ is required to refer to 20 C.F.R. § 404.1569 and Table No. 1, Appendix 2, Pt. 404, Sub-part P, to determine if under his residual functional capacity with his severe medically determinable impairments, he

is disabled. If the determination is the Plaintiff can perform light work the ALJ refers to Table No. 2, *supra*. Table No. 3, *supra*, is utilized for medium work. However, if the Plaintiff suffers from non-exertional or a combination of exertional and non-exertional impairments the Secretary may not utilize the Medical–Vocational Guidelines for a decision. Although the Guidelines may be under limited circumstances used as an "insight" for a decision, 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 200.00(e)(2) and *Young v. Sullivan*, 911 F.2d 180 (9th Cir.1990). When the Guidelines are not a decision making standard then the Secretary may only sustain his burden of proof by producing expert vocational testimony concerning the existence and availability of jobs in the national economy which the Plaintiff can perform, 20 C.F.R. P. 404, Sub-part P, App. 2, Sec. 200.00(e)(1) and (2), *Harrell v. Bowen*, 862 F.2d 471 (5th Cir.1988), and *Fields v. Bowen*, 805 F.2d 1168 (5th Cir.1986).

The five-step sequential test has been discussed and judicially approved many times, *Bowen v. Yuckert*, 482 U.S. at pgs. 141–142, 107 S.Ct. at pgs. 2291–92, *Heckler v. Campbell*, 461 U.S. at pg. 461, 103 S.Ct. at pg. 1954, and *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir.1984).

### SUBSTANTIAL EVIDENCE

The standard by which the decision of the ALJ is reviewed is known as the doctrine of "substantial evidence". If the ALJ's findings are supported by substantial evidence then the decision will be affirmed. Substantial evidence was defined by the United States Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) as,

"... more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

■ A substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the decision of the Secretary. The Court is required to consider the record as a whole, *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985), and *Singletary v. Bowen*, 798 F.2d 818 (5th Cir.1986).

On the converse to find there is "no substantial evidence" to justify reversal of the ALJ's decision, it must be concluded there is a "conspicuous absence of credible choices", *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir.1983).

■ As noted, in 1952 Plaintiff suffered paralysis from polio. His major disability after his recovery was to rehabilitate the muscles with regard to his diaphragm and in his lower extremities, particularly his right leg. At the Hearing Plaintiff's attorney demonstrated the difference in size of his two (2) legs. Only one recorded medical event of any consequence occurs to the Plaintiff from 1952 until a claimed onset date of March, 1988. In May, 1986 while riding a horse he suffered a broken wrist. He was put in a cast. The cast was removed, and according to an x-ray by Dr. Paul W. Merriwether on June 17, 1986, he had a good alignment of his wrist with healing. Then he will suffer in a fall a shoulder injury. Intoxication is mentioned with regard to this injury. Plaintiff denied he was intoxicated and it is only prejudicial but not relevant. Plaintiff suffered a dislocated shoulder and received treatment for some time. Later reports indicate he is still attempting to fully recover from this shoulder injury.

The first medical record with regard to Plaintiff's complaints, which he alleges create a disability entitling him to Social Security benefits, is by Dr. Tony R. Loggins who wrote a report on January 30, 1990. Dr. Loggins found he suffered several muscular weaknesses. However, he opined the etiology of these weaknesses was uncertain. The Doctor initially thought perhaps it was dietary. It apparently was this examination which indicated something to do with "hypoglycemia (sic)." The Doctor noted his urinalysis indicated positive for ketone, although there was no significant elevation in his blood sugar. Ketosis is the diabetic result of a lack of insulin in the utilization of carbohydrates for energy. Again, on June 15, 1990, he had acetone in his urine, but his glucose on fasting was 99 mgm %. This is a fasting blood sugar within the range of normal limits.

These are the only mention of any blood sugar problems. The Doctor found he still had a decreased strength in his right lower extremity with an abnormal reflex. Plaintiff indicated to the Doctor he was concerned about the possibility of post-polio type syndrome with nerve damage.

Dr. Tom Hutton, a specialist in neurology, did a very thorough examination in May, 1991. The Doctor determined an MRI Scan of the head, an EMG, and an NCV study were essential for a definitive diagnosis. The imaging study was done on May 30, 1991. There was found in the brain either demyelinating lesions or focal white-matter infarcts. The later would indicate minor strokes. Following those tests Dr. Hutton wrote a new report. He noted the three lacunar infarctions in the left hemisphere of the brain, and one probable lacunar infarction in the right hemisphere of the brain. He also took note of his elevated blood pressure. Dr. Hutton said he felt the progressive weakness had more to do with his cerebrovascular disease rather than a substantial worsening of his polio problems. Dr. Hutton was also concerned about his hypertension. The hypertension concern would arise from two factors, one the blood pressure was elevated, and there was evidence of a previous strokes or bleeding in the brain. The Doctor himself did the nerve conduction studies, and found innervation in the upper and lower extremities, with it more prominent in the right lower extremity. The Doctor found this was consistent with his history of polio, which had involved all of his extremities, and particular his right lower extremity.

The Plaintiff was seen by Dr. Loggins again on June 13, 1991. As a result of Dr. Hutton's opinion about the cerebrovascular disease and what was noted as a family history of stroke in the Plaintiff, the Doctor was concerned. The Doctor found he had hypertension, post-polio syndrome, lacunar infarcts, and cerebrovascular disease. He was given medication for his high blood pressure.

Dr. Hutton did a medical assessment of Plaintiff's ability to do work related activities. With regard to lifting and carrying, Dr. Hutton said he had weak deltoids, very weak legs, an abnormal EMG exam, and severe elevated blood pressure. With regard to how much he could *lift* and *carry* the Doctor said he cannot do anything in this category. The Doctor noted with regard to standing and walking he could do some standing and walking for about 15 to 30 minutes, but he could not do it continuously. Then concerning sitting, it was found he could sit for 8 hours. Dr. Hutton said he could never climb, balance, stoop, crouch, kneel or crawl. The Doctor found his ability to reach and push/pull was affected by his impairments. The Doctor also found he could not work at heights, around moving machinery, or in temperature extremes. For these the Doctor noted he had weakness and hypertension. The Doctor stated he could not do any activity requiring strength or walking for any distance. Based upon this medical assessment by Dr. Hutton the ALJ determined Plaintiff was able to perform a full range of sedentary work. Dr. Loggins also did a medical assessment on July 2, 1991. In some particulars, and with regard to his abilities, it disagreed in part with Dr. Hutton's appraisal. Dr. Loggins opined the standing and walking was limited to 1 to 2 hours in a total day, and only continuously for a quarter of an hour, although his ability to sit was not affected. Sedentary work is defined in 20 C.F.R. § 404.1567(a). It is defined as a job which involves sitting, a certain amount of walking, standing, lifting, and carrying. It specifically states a job is sedentary if walking and standing are required occasionally. Dr. Hutton's assessment is definitely not a finding Plaintiff could perform a *full* range of sedentary work. Dr. Loggins' report is in the same vein as Dr. Hutton's opinion.

It would appear on the face of the above analysis the appropriate Order is simply to find there is not substantial evidence to support the Secretary's application of the Medical Vocational Guidelines. However, there are two (2) other factors which apply. In addition to the use of the Guidelines, there was also the testimony of a vocational expert finding there were jobs in the economy which could be performed by the Plaintiff. This too was a part of the findings of the ALJ. He found the vocational expert had appropriately found jobs which could be performed in

the economy by the Plaintiff. However, the ALJ made this finding based upon (1) Plaintiff's full range of sedentary work capabilities, and (2) the prior work experience of the Plaintiff making him a skilled worker with transferable skills to other employment. In considering the Plaintiff's transferable skills the vocational expert relied on the Department of Labor *Dictionary of Occupational Titles.* The occupation of repair of electric motors is defined in the Dictionary. It is occupation number 721.684–022. The definition which applies to assemblers and repairers of electric motors is as follows;

> "Assembles subassemblies and parts of dynamotors, converters, and electric motors used in instruments, appliances, and power tools and handtools: Bolts field windings and brush holders into motor housings, using wrenches, screwdrivers, and holding *fixtures* Presses bushings and bearings into motor head, using arbor press. Secures fans and gears to armature shaft, using nuts and lock washers, and places armature shaft in bearings. Solders or screws electrical leads to brushes, and switch and cord assembly, using soldering iron. Assembles end brackets and base to housing and fastens with screws. Lubricates gears and other moving parts, using oilcan, paddle, or grease gun. Turns shaft to insure free movement of parts. May screw covers on motor ends to keep out dirt and moisture during shipment."

With regard to transferable skills see *Miller v. Shalala*, 825 F.Supp. 776 (N.D.Tex. 1993), and *Smith v. Sullivan*, 799 F.Supp. 659 (N.D.Tex.1992). During the testimony of the vocational expert there was a discussion during his questioning about transferable skills and references were made to the *Dictionary of Occupational Titles.* As noted, the occupation of a electric motor repair bears a nine (9) digit number. That number is important in several respects. However, for purposes of considering skills, the three (3) middle digits are applicable. Those middle three (3) digits are the occupational code, or the worker function ratings of tasks performed in the specific occupation. Every job requires a worker to function in some degree in relation to (1) data, (2) people, and (3) things. Each of the digits expresses the worker's relation to each of those three groups. The relationship with data is the fourth digit, the relationship with people is the fifth digit, and the relationship with things is the sixth digit. Each of these three (3) worker functions has its own list of skills. The lower the number the more *skilled* the worker. The higher the number up to the maximum number under any category, the less skilled. The low number in each category is zero. Under data the high number is 6, meaning it is the least skilled of all persons working with data. Thus, it is noted the fourth digit number is a 6 for an electric motor repair. Under people 8 is the lowest skilled number. The fifth digit number is 8, thus *electric motor repair* working with people is the least skilled. Under things the numbers run from 0 to 7, and Plaintiff's job has a 4. This means he has learned as a part of his work function to "manipulate." He is about half way up the scale for skills. There is also a definition for each skill level. Under data, number 6 means to judge the readily, observable, functional, structural, or compositional characteristics of data, people or things. Under people, category 8 is taking instruction/helping. This applies to "non-learning" helpers. No variety of responsibility is involved in this function. Under things, category 4 referring to manipulating means using body members, tools, or special devices to work, move, guide or place objects or materials. It does involve latitude of judgment with regard to the precision attained, and selecting the appropriate tool, object or material, although this is readily manifest. With those considerations, and the overlay of the definition of skill requirements in 20 C.F.R. § 404.1568, both together create a viable question about whether or not the Plaintiff had any skills to be transferred. Without making it an opinion, it would facially appear Plaintiff is only a semi-skilled worker pursuant to 20 C.F.R. § 404.1568(b). This still would be subject to the demonstration of transferability in § 404.1568(d)(2).

■ However, there is now a pre-eminent problem as to when and on what date, per Drs. Hutton and Loggins, Plaintiff became disabled from even sedentary work. Was a determination Plaintiff could no longer per-

form sedentary work on the date in 1991 of Dr. Hutton's assessment, or was Dr. Hutton making a determination the sedentary work could not be performed in March, 1988? Thus, knowing the date on which the disability occurs is vital. In *Spellman v. Shalala*, 1 F.3d 357 (5th Cir.1993), plaintiff suffered from a condition which involved a slow progression of increasing impairments. The Fifth Circuit said, *id.* at 362, a correct determination of the onset date of disability was *critical* to the decision and referred to SSR 83-20. The Court held in claims involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous, and the Secretary must infer an onset date, then SSR 83-20 requires the inference be based upon an informed medical judgment. The Court specifically held the Secretary could not make such an inference without the assistance of a medical advisor. The *Spellman* Court noted, *id.* at 363, a problem about making this determination. As in the case at bar, there was in *Spellman* a lack of medical opinions and examinations just before and just after the crucial and critical claimed disability date.

It is apparent from this record the ALJ's reliance on Dr. Hutton's medical assessment to justify a finding of an ability to perform a full range of sedentary work, and be able to utilize the Medical Vocational Guidelines is misplaced. If you rely on Dr. Hutton's assessment it will not fit with the necessary requirements of sedentary work as set out in the Regulations. Then, this forces the Court or the Secretary to refer to the vocational expert to make the determination. The vocational expert faces two (2) problems. First, he has not been tied down to a specific date as to the onset of the maximum of the disabilities. In addition, there would appear to be a question about his appraisal of what skills the Plaintiff may have acquired as an electric motor repairer, particularly when considered in light of the *Dictionary of Occupational Titles'* definition of this job, and the work function categories assigned to electric motor repair. Since there is a limitation, even on sedentary work ability, and a question about the transferability of skills, if any, thus the vocational expert's opinion is also in jeopardy. However, imperative to all of these considerations is a determination of the onset date of Plaintiff's disability. The Secretary did not utilize as required by *Spellman v. Shalala, supra,* a medical advisor.

I, therefore, recommend it be found there is not substantial evidence to support the decision of the Secretary finding "no disability" at the Fifth Sequential Step of the decision making process because of the lack of the utilization of a medical advisor to establish an onset date of disability.

I, further recommend it be found there is not substantial evidence to support the decision of the Secretary finding "no disability" at the Fifth and final Sequential Step of the decision making process.

I, further recommend as a part of the Order remanding case to the Secretary it be held there is conspicuous absence of credibility choices, and the medical reports in the record establish Plaintiff suffers from a "disability" which could entitle him to collect disability insurance benefits, and the only missing ingredient to determine whether he is entitled to the same or not, is to establish through a medical advisor the onset date of his disabilities, and whether or not this date is within the time frame of his qualification to receive such disability payments.

I, further recommend it be found this Court retains jurisdiction of this claim because the Remand Order is for the taking of additional evidence and is, thus under 42 U.S.C. § 405(g), a sentence six remand and not the entry of a final judgment under sentence four of such statute, *Sullivan v. Finkelstein,* 496 U.S. 617, 625–30, 110 S.Ct. 2658, 2664–66, 110 L.Ed.2d 563 (1990), *Frizzell v. Sullivan,* 937 F.2d 254 (5th Cir.1991), and *Kane v. Heckler,* 731 F.2d 1216 (5th Cir.1984).

I, further recommend this case be remanded to the Secretary for a reconsideration beginning at the Fifth Sequential Step of the decision making process, and the Secretary to make use of a medical advisor to determine the onset date of the Plaintiff's disability.

The Clerk is directed to file the Findings, Conclusions and Recommendation and to

send a copy of it to the Plaintiff and a copy to each attorney of record. Any party may object to the proposed Findings, Conclusions and Recommendation within ten (10) days after having been served with a copy hereof, Rule 72, Federal Rules of Civil Procedure, and Rule 4(a)(1) of Miscellaneous Order No. 6 as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas. Such party shall file with the Clerk of the Court, serve on the Magistrate Judge and on all parties, written objections, which shall specifically identify the portions of the Findings, Conclusions and Recommendation to which objection is made and shall set out fully the basis for each such objection. Objections are required to obtain a de novo review by a United States District Judge. Failure to timely file written objections to the proposed Findings, Conclusions and Recommendation contained in this report shall bar an aggrieved party from attacking the factual findings on appeal. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) and *Nettles v. Wainwright,* 677 F.2d 404, 408 (5th Cir.1982) (en banc).

DATED January 14, 1994.