864 F.2d 336
 24 Soc.Sec.Rep.Ser. 210, Unempl.Ins.Rep. CCH 14491A
Theresa BROWN, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of the United States
Department of Health and Human Services, Defendant-Appellee.
 No. 88-4294
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 28, 1988.
 John D. Thompson, Jr., Ph.D., S.J.D., Acadiana Legal Service Corp., Lafayette, La., for plaintiff-appellant.
 Marguerite Lokey, Asst. U.S. Atty., Dallas, Tex., Joseph S. Cage, Jr., U.S. Atty., Victoria E. Young, Asst. U.S. Atty., Shreveport, La., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before RUBIN, GARWOOD and DAVIS, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 Plaintiff-appellant Theresa Brown (Brown) appeals the district court's rejection of her challenge to the Secretary of the Department of Health and Human Services' (Secretary) denial of her claim for disability insurance and supplement security income benefits under sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act. Brown asserts that her mental deficiencies automatically qualify her for benefits under 20 C.F.R. Sec. 404.1520 and Appendix 1 of Subpart P of that regulation. Therefore, she claims, the district court should not have sustained the Administrative Law Judge's (ALJ) denial of her application for benefits. For reasons stated below, this Court affirms the decision of the district court.
 
 Facts and Proceedings Below
 
 2
 Brown, who is mildly mentally retarded, first filed her application for social security benefits on November 17, 1983, alleging disability in the form of multiple aches and pains, as well as psychological problems dating from a June 1, 1981, accident in which she was hit by a car while on foot. She was thirty-nine years old on the day she was hit, had a ninth-grade education, and had been employed as a housekeeper and hotel maid for several years. She was not seriously injured and did not see a doctor until the next day. The Secretary denied appellant's application on December 8, 1983, and this decision was upheld by the ALJ and the Appeals Council. On appeal, however, the district court remanded the action to the Secretary for reconsideration under the newly-issued mental impairment listings of 20 C.F.R. Sec. 404, Subpart P, Appendix 1 (Appendix 1).[1]
 
 
 3
 The ALJ at the second hearing, held May 1, 1986, applied the new listing and similarly denied appellant's application. The Appeals Council upheld this denial, and the district court, on March 21, 1988, affirmed on recommendation of its magistrate. Brown contends that the ALJ did not have substantial evidence to find that her mental impairments failed to adequately compare to the particular mental disorders described in sections 12.05(C) and 12.07 of Appendix 1. We turn now to the regulations and the specifics of appellant's complaints.
 
 
 4
 Brown claims that the ALJ erred at the third stage of a five-step process applied to determine disability under the social security regulations. See 20 C.F.R. Sec. 404.1520 (1987). In order for the Secretary to find a compensable disability, the applicant must first show that she is not engaged in substantial gainful activity, and that she suffers from an impairment that severely limits her physical or mental ability to do basic work activities. Brown, who has been unemployed since the accident, apparently made these showings satisfactorily. The ALJ then compares the applicant's impairment to the listing of impairments in Appendix 1, and if he finds a match, he deems the applicant disabled and ends the inquiry. Otherwise, the applicant must then show that she is not capable of performing work she has done in the past. If she is capable of doing her past work, that ends the inquiry. Finally, if she is not so capable, then she is deemed disabled unless the Secretary shows that the applicant can perform other jobs available in the workplace (in which case she is not disabled). This final step is not at issue here.
 
 
 5
 The ALJ presiding over the second hearing denied appellant's application on the ground that she was capable of performing the domestic cleaning work she had done in the past. He did not find a match between appellant's impairments and those listed in Appendix 1. She disputes this finding, claiming that overwhelming evidence before the ALJ proved that she suffered from a somatoform disorder as described in section 12.07, as well as a combination of mental retardation and "a physical or other mental impairment imposing additional and significant work-related limitation of function," as described in section 12.05(C).
 
 Discussion
 
 6
 In reviewing an ALJ's disability determination, this Court is to decide only whether substantial evidence exists in the record as a whole to support the ALJ's findings, and whether he made any prejudicial legal errors. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir.1987). Evidence is substantial if a reasonable mind could accept it as sufficient to support the ALJ's conclusion. Id. The claimant has the burden of proving that she is disabled within the meaning of the Social Security Act and implementing regulations. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988).
 
 
 7
 We first address whether substantial evidence supports the ALJ's finding that appellant's mental impairment did not constitute a somatoform disorder under section 12.07 of Appendix 1, described as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." Such a disorder is obviously problematic for an ALJ, who must locate the fine credibility line between this legitimate mental impairment and physical symptoms consciously exaggerated in an effort to avoid working and acquire disability benefits where none are due. Consequently, the Secretary provided guidance in section 12.07 by describing when a somatoform disorder has reached the required level of severity to automatically qualify as a disability. The requirements relevant to Brown's claim are that (1) the disorder is medically documented by evidence of "[a] history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly," and (2) the disorder results in at least three of the following: (i) marked difficulties in maintaining social functioning; (ii) marked restrictions of daily activities; (iii) deficiencies of concentration, persistence, or pace resulting in a frequent failure to timely complete tasks; or (iv) repeated episodes of deterioration or decompensation in work-like settings that cause the individual to withdraw from that situation or to experience exacerbation of symptoms.
 
 
 8
 In her attempt to convince this Court that the ALJ did not have substantial evidence to reject her claim under section 12.07, appellant points primarily to the October 18, 1984, psychiatric report of William P. Cloyd, M.D., who examined Brown on October 8, 1984, at her counsel's request. Dr. Cloyd diagnosed appellant as suffering from mild mental retardation and a somatization disorder. Significantly, he also stated:
 
 
 9
 "Ms. Brown does not have a severe psychiatric impairment. It is felt that there is a marked tendency not only to be preoccupied with her complaints but to perhaps exaggerate and overemphasize their degree of intensity. In her mind at the present time, she has the satisfaction of having a 'disabling' injury which is socially acceptable and which is unlikely to respond to any form of medical treatment, psychiatric or otherwise. It is as though the accident-injury has provided her with an excuse not to have to face the fact that she would have to work in a relatively boring job capacity for the rest of her life. Her overall prognosis for improvement is quite poor. It is felt that the degree of disability is not due to a mental illness but rather due to her inadequacies of personality, coping skills and intelligence. The accident-injury has allowed her to retreat to a more passive, dependent position in life in which she need not expose herself to situations of stress with a continued focus being on complaints and symptoms. She does not reveal any anxiety or depression of pathological degree. In her limited way she has adapted to this rather regressed dependent lifestyle."
 
 
 10
 Finally, Dr. Cloyd stated that he did not consider Brown disabled according to Social Security Administration criteria.
 
 
 11
 In addition to this very qualified, rather disconsonant, diagnosis of somatization disorder, appellant emphasizes the August 31, 1984, medical report of neurologist Steven J. Snatic, M.D., which states that "Mrs. Brown has evidence of marked functional overlay consisting of exaggeration of any true muscle weakness that hse [sic ] might have. There is no objective evidence of any neurological disability whatsoever." Dr. Snatic did not mention somatization disorder or any other suspected mental impairment. In fact, he stated that appellant's mental status seemed to be normal. Looking at this report as a whole, the ALJ would not have been unreasonable to interpret Dr. Snatic's report as implying that Brown complained of apparently nonexistent physical symptoms to a significant extent out of a desire to obtain disability benefits or for similar reasons.
 
 
 12
 Finally, appellant asserts that the diagnosis of an unnamed physician at the Acadiana Mental Health Center, detailed in a letter dated April 2, 1986, requires the ALJ to find her disabled under section 12.07. That letter states: "[Ms. Brown] was given the diagnosis of Mild Mental Retardation and Somatization Disorder in accordance with a copy of a report we received from your office. The report was a psychiatric evaluation by Dr. William Cloyd, and our doctor agreed with his findings." Even if we conclude that this statement necessarily implies that the health center doctor performed an independent examination of appellant, clearly this diagnosis goes no further than Dr. Cloyd's, and therefore is no more conclusive of the issue than Dr. Cloyd's diagnosis.
 
 
 13
 In light of the section 12.07 severity restrictions noted above, we find that, under the record as a whole, none of the evidence just detailed required the ALJ to find that appellant had a somatization disorder as described in section 12.07. At thirty-nine, Brown was well over thirty when the disorder set in; much of the medical evidence, not described in detail here, indicates that Brown's complaints were tied to minor, actual physical impairments; and none of the four listed effects of the disorder were noted. In addition, a psychologist, William A. Hawkins, Ph.D., of the Acadiana Psychiatry and Psychology Group, examined appellant on August 15, 1984, and reported no somatization disorder. He diagnosed appellant as borderline mentally retarded, but stated that she is "intellectually and emotionally capable of gainful employment," and "she should be capable of functioning under supervision in many different areas." Specifically, Dr. Hawkins stated that Brown's reasoning, comprehension, and memory functioned adequately; she interacted adequately with her friends and family; and she participated in a variety of daily home activities. Although appellant argues that Dr. Hawkins did no tests that would reveal a somatization disorder, a reasonable person could conclude that these three findings negate three of the four results detailed in section 12.07, at least three of which are necessary for an impairment to be severe enough to satisfy that section. Dr. Hawkins also noted Brown's distress about losing a trial in which she sought damages from the driver of the car that hit her, reasonably implying that he suspected a monetary goal behind appellant's complaints.
 
 
 14
 In summary, substantial evidence supports the ALJ's determination that Brown did not suffer from a somatization disorder and that her condition did not satisfy the section 12.07 requirements for automatic disability.
 
 
 15
 We now review the evidence respecting whether appellant satisfied the automatic disability criteria described in section 12.05(C) of Appendix 1. As noted above, section 12.05(C) is satisfied when the applicant is simultaneously mentally retarded--not disputed here--and suffers "a physical or other mental impairment imposing additional and significant work-related limitation of function." Appellant does not seriously contend that her physical impairments satisfy this section, because abundant evidence supports the conclusion that Brown suffered only minor actual physical impairment for any continual twelve-month period, and none of the physicians consulted instructed her not to return to work, some stating just the opposite. It seems just as clear, from the doctors' reports described above, that substantial evidence supports the conclusion that if appellant has any mental impairment at all in addition to her mental retardation, it does not significantly limit her ability to work. Dr. Hawkins stated this outright; even Dr. Cloyd reported that appellant did not have a severe psychiatric impairment--that she used the accident and alleged resulting injuries as an excuse not to work. The physician from the Acadiana Mental Health Center concurred in Cloyd's diagnosis.
 
 Conclusion
 
 16
 The findings of the ALJ below are supported by substantial evidence on the record as a whole and are not inconsistent with the regulations. We conclude that the district court correctly denied appellant's challenge to the Secretary's denial of her application for social security disability and related benefits, and the district court's decision is therefore
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Section 12.05(C) of the 1985 Appendix 1 read the same in relevant part as the post-1985 version. Section 12.07 on somatization disorders, however, did not exist in the earlier version