**Raymond CROUCHET, Sr.,
Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant–Appellee.**

No. 89–3035
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 25, 1989.

Aubrey E. Pate, Slidell, La., for plaintiff-appellant.

Marguerite Lokey, Asst. U.S. Atty., Dallas, Tex., John P. Volz, U.S. Atty., New Orleans, La., for defendant-appellee.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Appellant Raymond Crouchet sought disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 423 and 1381a. The Secretary of Health and Human Services determined that Crouchet was not disabled within the meaning of the Act, and so was not entitled to benefits. Crouchet appealed to the United States District Court for the Eastern District of Louisiana, which granted summary judgment for the Secretary.

On appeal to this court, Crouchet claims that there is not substantial evidence to support the Secretary's finding that he is not disabled. He argues that his condition meets or equals a listed impairment in Appendix 1 of the Secretary's regulations; that he suffers disabling pain; that the ALJ failed to list all of his impairments in a hypothetical question posed to the vocational expert; and that he is disabled pursuant to the medical-vocational rules. Finding no merit in any of these arguments, we affirm.

I

Crouchet applied for disability benefits and supplemental security income in November 1984, alleging disability since November 5, 1984, due to a heart condition. In 1979, Crouchet suffered a heart attack and underwent quadruple bypass surgery. He was unable to return to his prior job as a tugboat deckhand but, after good surgical results, worked as a tugboat dispatcher until July 1984.

In November 1984, Crouchet was hospitalized for severe chest pain. Angiographic evidence revealed an acute myocardial infarction. Dr. Falterman prescribed medication and, upon release, advised Crouchet to mildly restrict his activities. During a follow-up examination, Dr. Falterman determined that Crouchet was extremely short of breath and unable to use his right hand effectively. Crouchet complained that his right leg continually gave out on him. Dr. Falterman conducted a ministress test, which was negative for ischemia.

In February 1985, Crouchet was examined by his treating physician, Dr. Steiner. Crouchet reported that he sometimes had sharp shooting pains. Dr. Steiner did not believe that these pains were related to angina. Crouchet later underwent a stress test, which was negative for angina at six minutes of exercise.

Crouchet also saw Dr. Kirkwood at the request of the Disability Determination Services. Dr. Kirkwood found that Crouchet's chest pain was consistent with angina, but noted that the pain was generally relieved within five minutes by nitroglycerin. Dr. Kirkwood opined that Crouchet had severe atherosclerotic cardiovascular disease. He noted that a 1984 angiography demonstrated that two of Crouchet's bypasses were occluded.

Crouchet saw Dr. Steiner again in May 1985. Crouchet reported severe angina, including one episode which lasted for five hours one night. Dr. Steiner wrote a brief letter, stating that Crouchet's heart surgery had not been completely successful, that he had severe angina, and that in his opinion "[Crouchet] should be on total disability."

Crouchet also saw Dr. Miotin, a cardiologist, in May 1985. Dr. Miotin examined Crouchet, and found that he was not in distress. A Holter monitor test showed no evidence of arrhythmias or ischemia. Dr. Miotin suggested that Crouchet carry nitroglycerin with him at all times. During a follow-up examination in November, 1985, Crouchet complained of angina at low levels of exertion. Dr. Miotin found that Crouchet was free of symptoms of congestive heart failure, although he reported shortness of breath on exertion.

At a hearing before an ALJ in January 1986, Crouchet testified that he suffered from two types of chest pain. The first was a shooting type of pain which occurred when he exercised too much and which was

accompanied by a "pins and needles" pain in his arms. The second was a squeezing type pain which occurred every three to four days. He stated that nitroglycerin relieved this latter pain.

Dr. Giles, a cardiologist, also testified at the hearing. After reviewing all the medical exhibits and questioning Crouchet concerning his condition, Dr. Giles concluded that Crouchet had angina and that it occurred with moderate frequency. He acknowledged Dr. Steiner's letter but noted that no medical records had been submitted since February 1985. He opined that, as of that date, Crouchet was able to perform sedentary work. He indicated that Crouchet had exercised to six or seven METS on his stress test without ischemic chest pain. He testified that an individual capable of performing this level of exertion would be capable of sustaining activity of two to four METS, which would be the metabolic equivalent of performing auto repairs, radio or TV repairs, janitorial work, typing or bartending. Dr. Giles recommended that Crouchet not work twelve to twenty-four hour shifts, as he had done in past.

Bobby Roberts, a vocational expert, also testified. He stated that Crouchet's past work as a dispatcher was sedentary work, that 90% of such positions required only an eight-hour shift, and that 98% of dispatching jobs would not be highly stressful.

The ALJ permitted Crouchet to submit updated medical records following the hearing. These records contained evidence of mild obstructive lung disease. Dr. Giles reviewed these records and concluded that they did not show a worsening of Crouchet's condition nor change his opinion that Crouchet could perform sedentary work.

Thereafter, the ALJ found that Crouchet suffered from angina, but concluded that he was capable of performing sedentary work during eight-hour shifts with no strong emotional stress or imposed deadlines. Although he found that Crouchet could not return to his job because it required a twenty-four hour shift, he determined that Crouchet could work as a dispatcher as that job is generally performed in the economy. The ALJ therefore concluded that Crouchet was not disabled under the Act because he could perform his past relevant work. The Appeals Council denied Crouchet's request for review, and Crouchet sought review in federal court. The district court granted summary judgment for the Secretary. Crouchet now appeals.

II

Our review of the Secretary's decision to deny disability benefits is limited to whether there was substantial evidence to support the decision and whether there were any prejudicial legal errors. 42 U.S.C. § 405(g); *Brown v. Bowen*, 864 F.2d 336, 338 (5th Cir.1988). We do not sit to reweigh or substitute our judgment for the Secretary's, but must "scrutinize the record in its entirety to determine whether substantial evidence does indeed support the Secretary's findings." *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir.1983). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). On the other hand, our review of the district court's summary judgment ruling is de novo.

The Secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working? (2) Can the impairment be classified as severe? (3) Does the impairment meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Can the claimant perform past relevant work? and (5) Can the claimant perform other work? 20 C.F.R. § 404.1520 (1988).

In the instant case, the ALJ found that Crouchet's condition did not meet or equal a listed impairment and that Crouchet could perform his past relevant work. The ALJ therefore ruled that Crouchet was not disabled under the Social Security Act.

## A

■ Crouchet first contends that he is disabled because his condition meets a listed impairment in Appendix 1. Specifically, he argues that he has been shown by cardiac catheterization to have blockages of several coronary arteries and chest pain of cardiac origin which meet the criteria for disability under 20 C.F.R., Part 404, Subpart P, App. 1, § 4.04(B)(7).

The criteria in § 4.04(B), however, do not apply where there is documentation of an acceptable treadmill exercise test. § 4.00(G)(4). Crouchet underwent such a test in February 1985, and exercised to six METS without ischemic changes. Section 4.04(A) requires findings of ischemic changes at five METS or less. Crouchet therefore does not meet the criteria for this listed impairment.

Crouchet argues, however, that the exercise test is not substantial evidence because of later events, including a mild heart attack in May 1985 and his treating physician's opinion that he was totally disabled. Section 4.00(G)(4) provides that "the significance of findings of a treadmill exercise test must be considered in light of the clinical course of the disease which may have occurred subsequent to performance of the exercise test." In January 1986, Dr. Giles testified that Crouchet's anginal episodes "may have worsened a bit" since the exercise test, but noted that no medical records had been submitted since February 1985. The ALJ permitted Crouchet to submit additional medical evidence of his heart impairment following the hearing. Dr. Giles later reviewed this evidence and concluded that it did not demonstrate that Crouchet's condition had deteriorated nor change his opinion that Crouchet could perform sedentary work. The results of the exercise test and Dr. Giles testimony concerning subsequent medical records constitute substantial evidence supporting the Secretary's finding that Crouchet's heart impairment does not meet or equal a listed impairment.

## B

■ Crouchet next argues that the Secretary erred by failing to find him disabled due to his pain. We have held that pain, in and of itself, is disabling under the Act only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Harrell v. Bowen,* 862 F.2d 471, 480 (5th Cir.1988). The ALJ found that Crouchet could perform sedentary work despite his pain, relying on Crouchet's own testimony that his pain was intermittent and was relieved in seconds by nitroglycerin. The Secretary's finding that Crouchet's pain, in and of itself, was not disabling is therefore supported by substantial evidence.

## C

■ Crouchet next challenges the Secretary's finding that he could perform his past relevant work, contending that the ALJ failed to list all of his impairments, including his lung disease, in the hypothetical question posed to the vocational expert. This argument is meritless. Crouchet submitted additional medical records, including evidence of a mild lung disease, after the hearing. Dr. Giles concluded that these records did not alter his earlier opinion that Crouchet could perform sedentary work that was not highly stressful and required no more than eight-hour shifts.

At the hearing, the vocational expert testified about the functional demands of Crouchet's past work as a dispatcher, as that job is generally performed in the economy. He stated that a dispatcher performed sedentary work, that at least 90% of such positions required no more than eight-hour shifts, and that 98% of dispatcher jobs were not highly stressful. Based on this evidence, the ALJ concluded that Crouchet could not return to his job, which required twelve to twenty-four hour work shifts, but that he could work as a dispatcher as that job is generally performed in the economy. We find the evidence sufficient to support this decision.

## D

Finally, Crouchet contends that he is disabled pursuant to the medical-vocational

rules, specifically Rule 201.11. This argument also lacks merit. The ALJ never reached the issue of whether Crouchet could perform other work, finding that Crouchet could perform his past relevant work as it is generally performed in the economy. A finding that a claimant is not disabled at any point in the sequential evaluation process is conclusive and terminates the Secretary's analysis. *See Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir.1988).

Because we conclude that the Secretary's decision is supported by substantial evidence in the record, we affirm the district court's grant of summary judgment for the Secretary.

AFFIRMED.