**Danny L. AUSTIN, Appellant**

v.

**Larry G. MASSANARI,[1] Acting Commissioner of Social Security, Appellee**

**No. CIV. A. CV00–1189–M.**

United States District Court, W.D. Louisiana. Monroe Division.

July 20, 2001.

---

1. Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001. Pursuant to Fed.R.Civ.P. Rule 25(d)(1) and Fed.R.App.P. Rule 43(c)(2), Larry G. Massanari should be substituted for former Commissioner Kenneth S. Apfel or for former Acting Commissioner William A. Halter as the defendant.

Alex W. Rankin, Rankin Yeldell et al., Bastrop, LA, for plaintiff.

John A. Broadwell, U.S. Atty's Office, Shreveport, LA, for defendant.

### JUDGMENT

JAMES, District Judge.

For the reasons contained in the Report and Recommendation of the Magistrate Judge previously filed herein, and after an independent review of the entire record, and concurring with the Magistrate Judge's findings under the applicable law;

IT IS ORDERED that Danny L. Austin's appeal from the final decision of the Commissioner of Social Security is GRANTED and that the case is REMANDED FOR FURTHER PROCEEDINGS.

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

KIRK, United States Magistrate Judge.

Danny L. Austin ("Austin") filed an application for supplemental security income ("SSI") on October 20, 1993 (protective filing date September 10, 1993) (Tr. p. 80), alleging disability due to "back problems, blackout spells, polio, heart problems, and have been a heavy drinker" (Tr. p. 117). That application was denied by the Social Security Administration ("SSA") both initially (Tr. p. 83) and on reconsideration (Tr. p. 106).

A de novo hearing was held before an administrative law judge ("ALJ") on December 4, 1996 (Tr. pp. 37–79), at which Austin appeared with his attorney and his daughter. The ALJ found that, although. Austin has severe impairments of "residual effects from polio as a child affecting his lower extremities and causing back problems, a history of chronic obstructive pulmonary disease, and a history of non-severe alcohol abuse with depressive symptoms and episodes of blacking out" (Tr. p. 24), and has an eighth grade education, Austin is able to voluntarily control his use of alcohol and has the residual functional capacity to perform the full range of sedentary work. The ALJ concluded that a finding of "not disabled" was directed by Section 416.969 of Regulations No. 16 and Rule 201.18, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, as of the date of his decision on August 21, 1997 (Tr. pp. 25–26). On April 21, 2000, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Austin next filed this appeal for judicial review of the final decision of the Commissioner, which was referred to the undersigned Magistrate Judge for report and recommendation in accordance with a standing order of this court.

### Scope of Review

In considering Social Security appeals such as the one that is presently

before the Court, the Court is limited by 42 U.S.C. § 405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. *Crouchet v. Sullivan,* 885 F.2d 202, 204 (5th Cir.1989). For the evidence to be substantial, if must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994), citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *Singletary v. Bowen,* 798 F.2d 818, 823 (5th Cir.1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *Fraga v. Bowen,* 810 F.2d 1296, 1302 (5th Cir.1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir.1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. *Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir.1981). Also, *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir.1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. *Dellolio,* 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340 (5th Cir.1988); *Dellolio,* 705 F.2d at 125.

### Summary of Pertinent Facts

Austin was 48 years old at the time of his December 1996 administrative hearing (Tr. p. 43), had an eighth grade education (Tr. p. 44), and had past relevant work experience running a machine at a machine company (1972–1975), as a sheet metal worker (1975–1979), doing carpentry and electrical work for a construction company (1979–1980), and doing odd jobs such as painting, yard work and electrical work (1981–1994) (Tr. p. 134).

Austin started drinking when he was 16 years old; he began drinking very heavily in 1978, and subsequently went into detox (Tr. p. 203). In June 1994, Austin was treated at the Pines Treatment Center for chemical dependency on alcohol (Tr. p. 172). Austin completed his treatment and was discharged in August 1994, and then attended a vocational rehabilitation program (Tr. p. 172, 202). While at the Pines Treatment Center, Austin was tested and diagnosed with TB infection but he did not have the disease, and was treated for six months with INH and B–6 (Tr. p. 163, 203).

The vocational rehab client history (Tr. p. 202) reflects that Austin has no teeth, was undergoing treatment for TB, had polio as a child (18 months old) which required eight months in an iron lung, resulted in fourteen surgeries, and steel pins in both feet to hold them straight (Tr. p. 202–4). Austin walks with a limp (Tr. pp. 202–4). The report also shows that Austin had three prior DWI's for which he has been incarcerated, and had no income and no place to live (Tr. pp. 202–204). Austin has five children and is divorced (Tr. p. 204). Austin appeared to have low average intelligence, and stated his hobbies are fishing and reading (Tr. p. 204). Austin

can climb a ladder but cannot stand on it very long, and does not have a mental illness (Tr. pp. 202–4).

At the request of the SSA, Austin was evaluated in December 1994 by Dr. Dan John LaFleur, a family practitioner, for both a disability evaluation and complaints of chest pain (Tr. pp. 206–8). Austin walked with a slight limp and extreme muscle wasting was noted in both calves, as well as small, contracted feet, and hammer toes bilaterally (Tr. p. 207). Austin's EKG and chest x-ray were normal, and he was diagnosed with exertional angina; it was recommended that he be evaluated by a cardiologist and a cardiovascular surgeon (Tr. p. 207).

In September 1995, Austin was treated for seizures (including grand mal) related to alcohol withdrawal (Tr. pp. 219–31).

In May 1996, Austin underwent a mental status examination at the request of the SSA (Tr. pp. 252–56). Dr. E.H. Baker, a psychologist, found that, overall, Austin's sustained concentration is poor, his persistence is fair, he is able to interact appropriately on a one to one basis, he has adequate social interaction, social judgment and insight, and he has fair adaptation (Tr. p. 253–54). Dr. Baker found Austin has an alcohol problem (Austin stated he had not imbibed alcohol since December 1995), a back problem, breathing problems, and a history of polio which left him crippled (Tr. p. 254), and diagnosed "Alcohol–Related Disorder" and "Depressive Disorder" (Tr. p. 253). Dr. Baker stated Austin's prognosis was guarded because of his lengthy history of drinking and that Austin's physical problems resulting from polio appeared to be increasing (Tr. p. 254). Dr. Baker stated

that Austin was not competent to manage disability funds if awarded because of his alcohol problems, and recommended that Austin be referred to vocational rehabilitation for training (Tr. p. 254).

Austin also underwent a physical examination by Dr. Narendra Kutnikar (specialty not stated) at the request of the SSA in June 1996 (Tr. pp. 257–59). Dr. Kutnikar found wasting in both legs with talipes equinus varus deformity[2] (clubfoot) of both feet, a shorter right leg and wobbly gait, but no localized sensory losses; Austin was unable to walk on his heels or his toes and had poor balance (Tr. p. 258). Dr. Kutnikar noted that Austin is not able to squat and arise from a squatting position, and has some difficulty with bending over, but the range of motion in Austin's dorsolumbar spine was intact (Tr. p. 258). Dr. Kutnikar noted that Austin has chronic obstructive pulmonary disease which causes shortness of breath on exertion and which was being treated with an Atrovent inhaler (Tr. p. 258). Austin also had a consultative pulmonary function study, which revealed an essentially normal spirometry (Tr. p. 266). Austin was diagnosed with mild to moderate chronic obstructive pulmonary disease, a history of alcohol abuse, atypical chest pain which was probably caused by gastroesophageal reflux disease, and a history of polio affecting his legs (Tr. pp. 259–60). Austin was given limitations of lifting and carrying a maximum of 15 to 20 pounds occasionally, stand and walk no more than three to six hours in an eight hour day, only occasionally climb or balance, and never stoop, crouch, kneel or crawl (Tr. p. 261–62).

Austin was seen at E.A. Conway Medical Center in October 1996 for complaints

---

2. Talipes equinovarus is talipes equinus and talipes varus combined; the foot it plantarflexed, everted, and abducted. Talipes Equinus is permanent extension of the foot so that only the ball rests on the ground. Talipes Varus is inversion of the foot, the outer side of the sole only touching the ground. *Stedman's Medical Dictionary*, 26th Edition (1995).

of chest pain; he was noted to have been drinking (Tr. p. 276). After a full examination, Austin was discharged with a diagnosis of alcohol abuse, alcoholic liver disease, chest wall pain and COPD; he was prescribed Atrovent inhaler and Ventolin inhaler (Tr. pp. 277–78).

At his December 1996 administrative hearing, Austin testified that he lives by himself (Tr. p. 43), and can read, write and handle money, but does not do math very well (Tr. pp. 44–45). Austin does not own a vehicle and does not drive much (Tr. pp. 44, 54). Austin also testified that he had been working up to ten hours a week for the past three to four years helping to oversee home remodeling and repair work for his landlord, although very little in the three months preceding the hearing (Tr. pp. 48, 62). Austin was not assigned regular work hours and was not paid a regular wage, instead receiving a little cash for helping to watch the workmen when his landlord could not be there (Tr. p. 63).

Austin has not worked steadily since about 1982; Austin testified that employers no longer wanted to hire him due to fear he would be hurt on the job because of his black-out spells and because his legs have lost a lot of muscle mass and tend to give out on him and he has balance problems (Tr. p. 50–51).

Austin contracted polio when he was 18 months old and, since that time, he has had fourteen operations (Tr. p. 63). Post-polio syndrome caused the muscle wasting in Austin's legs (Tr. p. 64); Austin testified that his legs are so weak he cannot carry his groceries up the three steps to the front door of his trailer; instead, he has to set his groceries at the door (Tr. p. 64, 71). Austin's legs shake if he has to stand up for more than about 5 minutes, which is why his former employers won't hire him anymore (Tr. pp. 64–65).

Austin's breathing difficulties cause chest pain (Tr. pp. 66–67); Austin has to use one of his inhalers every 12 hours, and use the other inhaler every 4 to 6 hours (Tr. pp. 68–69). Austin does not have any pain in his legs, but his feet swell (Tr. p. 68). Austin also testified to problems with his long-term memory (Tr. pp. 69–70). The only pain medication Austin takes is over the counter medication (Tr. p. 72).

Austin testified that he still drinks about a six-pack of beer a week (Tr. pp. 54–55), and that the longest he has gone without drinking any alcohol is six months (Tr. p. 55).

Austin testified that he can sit comfortably for an hour and can walk three or four blocks, but cannot stand more than ten minutes (Tr. p. 56). Austin cannot bend over or stoop and pick things up because he lacks the strength to do so and he cannot straighten back up (Tr. pp. 58–59). If Austin has to pick something up off of the ground, he gets down on his knees to lift it (Tr. pp. 58–59); however, he is able to reach and pick up something (Tr. p. 59). Austin testified that he cannot lift a box of wire (30 to 50 pounds) out of the back of a truck or off of the ground (Tr. pp. 57–58), and cannot carry anything heavy (Tr. p. 60). Austin cannot lift his arms overhead for very long without resting, very seldom gets on a ladder, doing so only with someone else standing by him, and cannot climb up and down stairs without a rail to hold onto (Tr. pp. 60–61).

Austin gets other people to do his grocery shopping for him and to carry heavy bags into his trailer (Tr. pp. 70–71).

Austin's 25 year old daughter, Lorie Conley, testified that she sees Austin almost daily (Tr. p. 73), and that either she or her sister check on him every day to make sure he is eating, to see if he needs to go anywhere or needs groceries, and to make sure he feels okay (Tr. p. 74). Con-

ley testified that Austin "wobbles when he walks" and that carrying a sack of groceries would cause him to stagger, even when he is sober (Tr. pp. 74–75). Conley has noticed the shaking in Austin's legs has worsened in the last ten to fifteen years, and that he has started having difficulty breathing (Tr. p. 75). Conley also testified she has witnessed two of Austin's seizures; Conley said that on both occasions, Austin was sitting, then just sort of fell over, losing consciousness for a little while (Tr. pp. 76–77). Conley testified the loss of consciousness lasted 5 minutes to over half an hour, and when he wakes up he does not know where he is or who he is (Tr. p. 77). Conley testified these episodes were not connected with alcohol consumption (Tr. p. 77).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. § 416.920(a). The sequential process required the ALJ to determine whether Austin (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), cert. den., 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regula-

tions, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. *Greenspan,* 38 F.3d at 237.

In the case at bar, the ALJ found that Austin has not engaged in substantial gainful activity since September 10, 1993, and that he has severe impairments of "residual effects from polio as a child affecting his lower extremities and causing back problems, a history of chronic obstructive pulmonary disease and a history of non-severe alcohol abuse with depressive symptoms and episodes of blacking out," but that he "is able to voluntarily control his use of alcohol" and does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 24–26). The ALJ also found that Austin is unable to perform his past relevant work as a carpenter and an electrician (Tr. p. 25).

At Step No. 5 of the sequential process, the ALJ further found that Austin has the residual functional capacity to perform the full range of sedentary work (Tr. p. 25), and is a younger person with an eighth grade education and no transferable work skills (Tr. pp. 20–21). The ALJ concluded that, pursuant to Rule No. 201.18 of Table 1, Appendix 2 ("the grids"), Austin was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on August 21, 1997 (Tr. pp. 25–26).

## Issues

Austin raises the following issues for appellate review by this court:

1. Whether the court should remand Austin's case, in accordance with SSR 83–20, with instructions to obtain a med-

ical opinion regarding the onset date of Austin's disability.

2. Whether the Commissioner erred in not finding that Austin's post-polio syndrome either meets or equals Listing 11.11.

3. Whether the Commissioner erred in finding the Austin's mental impairment is not severe.

4. Whether the Commissioner erred in mechanically relying on the Medical–Vocational Guidelines and in not obtaining vocational expert testimony.

## Law and Analysis

### 1. Onset Date

First, Austin argues the court should remand Austin's case, in accordance with SSR 83–20, with instructions to obtain a medical opinion regarding the onset date of Austin's disability. At the heart of this appeal and Austin's argument on this issue is the fact that, while this case was awaiting a decision from the Appeals Council,[3] Austin filed another application for SSI, apparently on December 3, 1998. On his 1998 application, Austin was found to be disabled as of the date he filed the 1998 application for SSI and he was awarded benefits from that date[4] (Doc. Item 10, Ex.). Austin argues that, since his 1993 application was still open when he was found to be disabled in 1998, the Commis-

sioner must have erred in finding him not disabled on the 1993 application; the Commissioner's disability findings on the two applications with overlapping time frames appear to be contradictory. On that basis, Austin contends the Commissioner erred in finding him not disabled on his 1993 application and in failing to establish a disability onset date.

It is not stated in the record before the court whether Austin's 1998 SSI award was made for an impairment for which he applied for benefits in 1993, or whether he adduced new medical evidence in 1998 which showed a worsened condition or a new impairment. Since the record before the court does not show why Austin was awarded SSI, this court cannot determine whether any error was made in the case before the court with respect to the onset date of the disabling impairment(s) Austin was found to have in 1998. However, there were errors made in the 1993 proceedings which necessitate a remand, anyway. The SSA should review its apparently conflicting findings as to the date of Austin's disability on remand.

### 2. Post–Polio Syndrome

Austin contends the Commissioner erred in not finding that Austin's post-polio syndrome either meets or equals Listing 11.11.

---

**3.** Austin filed his application for SSI in this case on October 20, 1993, the hearing was held on December 4, 1996, the ALJ's decision was issued on August 21, 1997, the Appeals Council decided not to review it on April 21, 2000, and Austin filed this petition for judicial review on May 18, 2000. Under 20 C.F.R. §§ 416.330, 416.1455(b), Austin's 1993 application remained open due to his request for review by the Appeals Council and his request for judicial review.

**4.** If an SSI claimant is found to have been disabled at the time he filed his application for SSI, the earliest date for which he will

receive payment is the month he filed his application; benefits are not awarded retroactively to the disability onset date. Section 416.335 of 20 C.F.R. states: "When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month." See 20 C.F.R. §§ 416.330, 416.1455(b).

A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 891–92, 107 L.Ed.2d 967 (1990). See also, *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir.1990). For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley,* 110 S.Ct. at 891.

Listing 11.11 states:

*11.11 Anterior poliomyelitis.* With:

A. Persistent difficulty with swallowing or breathing; or

B. Unintelligible speech; or

C. Disorganization of motor function as described in 11.04B.[5]

The ALJ stated in his decision (Tr. p. 14) that Austin's impairments did not meet or equal any of the listings in Appendix 1, but did not specifically mention or discuss Listing 11.11. However, it was established in the medical evidence, and the ALJ found, that Austin suffers from anterior poliomyelitis, or post-polio syndrome, but the ALJ found Austin does not have a "sustained disturbance of gross and dexterous movements, or gait and station" (Tr. p. 222). The ALJ stated (Tr. p. 17), with respect to the Austin's polio residuals, that Austin's complaints related to this condition "are singular for the rarity with which they occur in the broad history of treatment documented in the file. Two consultative physical examinations have noted this condition. At Exhibit 20, the claimant's gait appeared abnormal, as if he were walking flat-footed and limping slightly. At Exhibit 24, the claimant was reported to have wasting in the lower extremities, greater on the right than on the left. This latter examination, performed in June 1996, contains an assessment of the claimant's physical abilities to perform work-like activity. The residual functional capacity identified below is felt to be substantially consistent with this assessment in any ways adverse to the claimant, the Administrative Law Judge noting no record of treatment suggesting greater limitations than those suggested in this consultative assessment."

As to the ALJ's comments, it is noted that the ALJ apparently failed to apprise himself of the fact that *there is no known treatment* for anterior poliomyelitis. Also, the ALJ does not mention the fact that Austin has the clubfoot deformity in *both* feet, which would account for the fact that Austin's "gait appeared abnormal," although it was certainly *not* because he was "walking flat footed" (Tr. p. 17). Moreover, the ALJ appears to have failed to obtain a neurological consultation,[6] although anterior poliomyelitis is a neurological disorder, and failed to refer to the POMS guidelines for evaluating anterior poliomyelitis. The ALJ found no medical evidence to substantiate a sustained dis-

5. Listing 11.04B states, "Significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." Listing 11.00C states, "Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hand, and arms."

6. As previously noted, Dr. Kutnikar's specialty is not stated in the administrative record.

**526**

turbance of gross and dexterous movements of gait and station (Tr. p. 22), again, apparently failing to note the fact that Austin has two clubbed feet. Moreover, Listing 1.00(B) states that an inability to walk on heels and toes, to squat, or to rise from a squatting position my be considered evidence of significant motor loss.

The medical evidence further shows that Austin is having increasing and persistent difficulties with breathing through chronic obstructive pulmonary disease, which is one symptoms of anterior poliomyelitis (see Listing 11.11), and at the time of his administrative hearing was using two different inhalers daily. Also, the. medical evidence and testimony appears to reflect disorganized motor function in Austin's legs.[7]

■ Since the ALJ did not explain .why he found Austin did not meet Listing 11.11, and Austin appears to meet that listing, substantial evidence does not support the Commissioner's finding that Austin's impairments do not meet or equal a listing in Appendix 1. The case should be remanded to the Commissioner for a determination of whether Austin meets Listing 11.11.[8] See *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir.1999). Also, *Drapeau v. Halter*, 2001 WL 280624, 246 F.3d 680 (10th Cir.2001) (unpublished opinion);

*Barron v. Sullivan*, 924 F.2d 227, 229 n. 2 (11th Cir.1991).

**3. Mental Impairment**

Austin argues the Commissioner erred in finding that his mental impairment, depression, is not severe. The ALJ found that Austin's depression was related to his abuse of alcohol, which could be controlled and would not affect his ability to work if he followed the recommended treatment to stop imbibing alcohol (Tr. p. 21). Austin contends his depression is not caused by his alcoholism and, by itself, constitutes a severe impairment.

Section 105 of the Contract with America Advancement Act of 1996, Pub.L. No. 104–121, 110 Stat. 847, 852–55 (1996), amended pertinent portions of the Social Security Act to prohibit the award of DIB and SSI to individuals disabled by alcoholism or drug addiction. See 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Under the amended regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find claimant disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). Under this regulation, the ALJ must evaluate which of Austin's current physical and mental limitations would remain if plaintiff

---

7. Disorganization of motor function for Listing 11.11 is defined in Listings 11.00(C) and 11.04 as "Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances...which occur singly or in various combinations ...."

8. The Program Operations Manual System (POMS) guidelines concerning poliomyelitis are useful in determining whether a claimant meets the listing for anterior poliomyelitis. See *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir.1999); *Mercier v. Secretary of Health & Human Serv.*, 1995 WL 568491, 66 F.3d 306

(1st Cir.1995) (unpublished opinion); *Barron v. Sullivan*, 924 F.2d 227, 229 n. 2 (11th Cir.1991) ("[T]he late effects of polio refer to new symptoms and neuromuscular manifestations which result in new functional loss in an individual with a prior history of acute polio. This functional loss typically occurs after a long period (more than 10 years and generally 20–40 years) of stability....These late neuromuscular effects are permanent and usual slowly progressive. There is no known treatment."); *Gullett v. Chater*, 973 F.Supp. 614, 619 (E.D.Tex.1997) (setting forth POMS DI 24580.010 on post-polio syndrome).

stopped using alcohol and then determined whether any or all of Austin's remaining limitations would be disabling.

The ALJ found that Austin's depression was related to his alcoholism and was not an independently severe impairment. Austin contends Dr. Baker's diagnosis of depression did not clearly state it was connected to his alcoholism. However, in the assessment of ability to do work-related activities, Dr. Baker wrote that Austin "is experiencing some depressive symptoms which may be related to past alcohol use which will hamper his emotional stability, predictability and reliability" (Tr. p. 256).

While Dr. Baker did not clearly state whether or not Austin's "depressive symptoms" are related to his alcohol abuse, the implication from his report was that they were related. Moreover, Dr. Baker never stated that Austin is experiencing depression of a type and intensity which, standing alone, would meet Listing 12.04. Moreover, Austin has not shown which of the requirements in Listing 12.04(A) and (B) he meets solely because of depression, without any involvement of his alcoholism. As explained above, Austin's "depressive symptoms" must exist in sufficient intensity to meet the listing requirements, separate and apart from his alcoholism.

■ Austin's burden was to show a medically determinable impairment which caused him to be unable to engage in substantial gainful activity. *Greenspan*, 38 F.3d at 237; 42 U.S.C. § 423(d)(1)(A) and (d)(3); 20 C.F.R. § 404.1508; 42 U.S.C. § 423(d)(1)(A). Since Austin did not carry his burden of proving that he suffers from depression and that, if he quit drinking entirely, he would still suffer from depression which would cause him to be unable to work, substantial evidence supports the ALJ's finding that Austin's "depressive symptoms" are not unrelated to his alco-

holism and, standing alone, did not prevent him from working.

*4. Vocational Expert*

Austin also contends the Commissioner erred in mechanically relying on the Medical–Vocational Guidelines and in not obtaining vocational expert testimony.

■ The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the nation economy that the claimant can perform. *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986), and cases cited therein.

The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specified job. *Fields*, 805 F.2d at 1171.

■ In the present case, the ALJ found that Austin suffers from two nonexertional impairments, anterior poliomyelitis and (nonsevere) alcoholism; the ALJ did not find any exertional impairments. Therefore, use of the tables in Appendix 2 was inappropriate, and the ALJ erred as a matter of law in relying solely on the Guidelines to determine that Austin is not disabled. Moreover, clubbed feet constitute a nonexertional impairment which make use of the Guidelines inappropriate.

The ALJ should have employed a vocational expert to assess Austin's employabil-

ity. The ALJ's use of the Guidelines was not sufficient to satisfy the Commissioner's burden and was error. Therefore, substantial evidence does not support the Commissioner's conclusion that Austin was not disabled.

Since, for the reasons set forth above, substantial evidence does not support the conclusions of the ALJ and the Appeals Council, the final decision of the Commissioner is incorrect as a matter of law. However, this does not entitle Austin to a decision in his favor based upon the existing record. The record is simply inconclusive as to the onset date of Austin's disability, whether Austin met Listing 11.11, and whether there were any jobs existing in sufficient numbers in the national economy which Austin could perform, given his true impairments. Therefore, Austin's case should be remanded to the Commissioner for further proceedings.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Austin's appeal from the final decision of the Commissioner of Social Security be GRANTED and that the case be REMANDED FOR FURTHER PROCEEDINGS consistent with the views expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

July 2, 2001.